[Civ. No. 22160. Second Dist., Div. One. July 15, 1957.]

In re JOHN ALEXANDER, a Minor. THE COUNTY OF VENTURA, Appellant, v. THE COUNTY OF LOS ANGELES, Respondent.

[Civ. No. 22161. Second Dist., Div. One. July 15, 1957.]

In re SHERMAN LEE ALEXANDER, a Minor. THE COUNTY OF VENTURA, Appellant, v. THE COUNTY OF LOS ANGELES, Respondent.

Roy A. Gustafson, District Attorney (Ventura), for Appellant.

Harold W. Kennedy, County Counsel (Los Angeles), and Robert C. Lynch, Deputy County Counsel, for Respondent.

DRAPEAU, J. pro tem.*—This opinion deals with appeals from orders of the juvenile court in Los Angeles County, transferring two juvenile court cases from that county to Ventura County. The appeals have been argued and submitted together. They involve but one question of law, and the facts are substantially the same in both cases. They have been, therefore, considered and disposed of together.

John Alexander and his half brother Sherman Lee Alexander have always lived in Los Angeles County. John was born July 17, 1940; Sherman was born May 7, 1943. The boys are illegitimate sons of unknown Negro fathers and a mother of Mexican descent.

The mother disappeared in 1946. In 1954 Los Angeles authorities found her receiving public support in Ventura County. She died in that county July 23, 1956.

Ventura County provided the mother with financial aid, through its Bureau of Public Assistance; Ventura County also paid for the support of the two boys in a foster home in Los Angeles County.

The boys were wards of the Los Angeles County juvenile court from March, 1949 to March, 1955, when that case was dismissed.

August 17, 1956, petitions were filed in the Los Angeles County juvenile court, alleging that the boys came within the provisions of section 700, subdivision (b), of the Welfare and Institutions Code, in that they had no parent or guardian exercising proper parental control, and that they needed such control.

The Los Angeles juvenile court found that the allegations of the petition were true, and further that the boys had been involved in perverted sexual practices.

The Los Angeles County juvenile court ordered these two cases transferred to Ventura County, because the mother had been for seven years a resident of that county, and the legal residence of the boys had been determined by the place of residence of the mother, notwithstanding their physical presence in Los Angeles County. Section 880 of the Welfare and

*Assigned by Chairman of Judicial Council.

Institutions Code permits transfers of Juvenile Court cases "[w]henever a petition is filed in the juvenile court of a county other than the residence of the person named in the petition."

The Ventura County juvenile court accepted jurisdiction of the boys, subject to the outcome of this appeal, and they have since been taken care of in Ventura County.

■ Therefore, the basic question here is whether or not these two boys were legal residents of Ventura County or of Los Angeles County, within the meaning of section 880 of the Welfare and Institutions Code, when the juvenile court proceedings here under review were commenced in Los Angeles County.

Comparing the dates above given demonstrates that the proceedings in Los Angeles County were commenced after the death of the mother.

The question then is answered by subdivision (f) of section 17.1 of the Welfare and Institutions Code. That subdivision reads:

"(f) [County where child is living.] If the residence is not determined under (a), (b), (c) or (e) hereof, the county in which the child is living shall be deemed the county of residence, if and when the child has had a physical presence in the county for one year."

The boys do not come under any of the other subsections of section 17.1. They lived in Los Angeles County all their lives, and after their mother died. Therefore, under section 17.1 of the Welfare and Institutions Code they were legal residents of Los Angeles County when these juvenile court cases were commenced.

In view of this conclusion, no good purpose would be served by commenting upon all of the arguments presented by counsel in these cases.

In passing, however, it may be well to touch briefly upon one or two of them.

In view of the plain, unambiguous language of the code section quoted, this court is not called upon to interpret it in any way. If the situations suggested by counsel for Los Angeles County should come to pass, we would have a legislative rather than a legal problem.

The county counsel's argument that the evidence does not support the statement that the boys lived in Los Angeles County all their lives is not well taken. This statement is based upon recitals appearing on face sheets of the Los Angeles

Probation Department. Under the law, the juvenile court must receive and consider the reports and recommendations of the probation officer. (Welf. & Inst. Code, § 638.1.)

Indeed, if these cases were viewed with a critical, technical eye it would be hard to say from this record that any order in it is supported by findings. We have no reporter's transcript of any of the evidence, except the predetention hearing.

In the orders making these boys wards of the juvenile court the judge signs a statement: "Recommendation contained herein is approved and so ordered." The Commissioner Referee of the juvenile court "recommends" the findings and the order.

The older boy steadfastly denied the charges against him, and it doesn't seem fair to use a legal presumption supporting the court's order based upon a finding that may follow a boy all through life.

While proceedings in the juvenile court are for the welfare of boys and girls, still they deprive individuals of liberty. Therefore, the administration of this law must conform to constitutional guarantees of due process of law. From the record in these two cases it is hard to say who testified, who evaluated the testimony, if any, or who made the findings; or whether or not we have here some sort of assembly-line administration of the juvenile court law.

The orders of transfer are based upon no stated findings, and must find their support upon all of the matters and things in the files, which, of course, include the information in the probation officer's report as to where the boys lived and when their mother died.

Nevertheless, the situation that is evident in this case merits consideration by the law-making power. For, evidently under the law as it now reads, the county to which juveniles may be transferred because of residence is given no notice of the proposed action of the transferring court, and no opportunity to appear and contest the proposed order. It would seem that the counties of California required by law to support wards of the juvenile court, sometimes for many years, should at least have notice of transfer proceedings, and an opportunity to appear in the juvenile court and contest them.

It is ordered that a copy of this opinion be filed in each case above named.

The order of transfer in each case is reversed.

White, P. J., and Fourt, J., concurred.